FILED
CLERK, U.S. DISTRICT COURT
AUG 2 7 2009
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. MARTINEZ and KRISTIN J. MARTINEZ, Husband and Wife,<br><br>   Plaintiffs,<br><br>vs.<br><br>LINCOLN GENERAL INSURANCE COMPANY, a Pennsylvania corporation and DOES 1-10, inclusive,<br><br>   Defendants. | CASE NO. CV07-7569-R<br><br>OPINION |

## I.  Background

This matter arose from a construction defect lawsuit filed by Plaintiffs Joseph and Kristin Martinez ("Plaintiffs") against their former contractor, Vernon F. Rumreich III, Inc. ("Rumreich, Inc." or the "Insured"), Vernon Rumreich III as an individual ("Mr. Rumreich") and Michelle Rumreich, as an individual ("Mrs. Rumreich"). The claim arose from Rumreich, Inc.'s work on a remodel of Plaintiffs' home. Defendant Lincoln General Insurance Co. ("Defendant") had previously issued a general liability policy (the "Policy") to Rumreich, Inc. and agreed to extend

1  a defense to Rumreich, Inc., Mr. Rumreich, and Mrs. Rumreich.  Defendant expressly refused to
2  waive its right to raise coverage defenses in the event that Plaintiffs successfully obtained a
3  judgment against Rumreich, Inc., Mr. Rumreich, or Mrs. Rumreich.
4       Plaintiffs' contract for home improvements with Rumreich, Inc. was dated May 9, 2002.
5  Construction commenced on June 3, 2002.  The CGL Policy took effect March 28, 2003 at 12:01
6  a.m., approximately ten months after construction began and two months before Plaintiffs moved
7  back into their supposedly nearly complete home in May of 2003.
8       At the time that Plaintiffs moved back into the home, work remained to be finished.  The
9  work was never completed.  Plaintiffs and Rumreich, Inc. had a falling out; Rumreich, Inc.
10  placed a mechanics lien on Plaintiffs' home.  Plaintiffs subsequently filed the Complaint in the
11  Underlying Action.  Plaintiffs initially sued Rumreich, Inc, Mr. Rumreich, and Mrs. Rumreich in
12  the Superior Court of California (the "Underlying Action"), case number YC 047381.  Plaintiffs'
13  Second Amended Complaint in the Underlying Action included claims for breach of contract,
14  negligence, fraudulent misrepresentation, negligent misrepresentation, and declaratory relief.
15  Plaintiffs alleged over 150 construction defects and errors, damages to other property resulting
16  from negligent work, and overcharges.
17       On the morning of trial, June 3, 2005, the parties in the Underlying Action agreed to
18  binding arbitration, and subsequently agreed to engage Michael Bayard as arbitrator (the
19  "Arbitrator").  The arbitration agreement included a provision that Mrs. Rumreich would be
20  dismissed from the action and a provision that Rumreich, Inc. would dismiss its mechanics lien
21  with prejudice.  Defendant Lincoln General did not object to the arbitration agreement; however,
22  Defendant Lincoln General expressly reserved its right to assert any and all applicable coverage
23  defenses.  This express reservation of rights was read into the court's transcript in the
24  Underlying Action, along with other portions of the arbitration agreement.
25       The parties spent five days in arbitration.  On August 26, 2005, the Arbitrator issued an
26  Interim Arbitration Award which found Rumreich, Inc. liable for damages caused to the home.
27  Following the Interim Arbitration Award, Rumreich, Inc. filed for voluntary Chapter 7
28  bankruptcy on October 14, 2005.  After the bankruptcy court granted limited relief from the

automatic stay, the Arbitrator issued the Final Arbitration Award on March 30, 2006.

The Arbitrator found for Plaintiffs on the first claim for breach of contract against Rumreich, Inc., finding that "Rumreich, Inc. materially breached its contract with Plaintiffs by failing to perform its work on the project in a good and workmanlike manner, resulting in a number of substantial construction defects in the home." The Arbitrator also found for Plaintiffs on the second claim for negligence against Rumreich, Inc. finding that Rumreich, Inc. negligently performed its work on the project, resulting in a number of substantial construction defects in the home. The Arbitrator found for Rumreich, Inc., and Mr. Rumreich on Plaintiffs' claims for fraudulent misrepresentation and negligent misrepresentation, and found that Rumreich, Inc. is not the alter ego of Mr. Rumreich.

The Arbitrator specifically found that: "defective work performed by Rumreich, Inc, and subcontractors working on behalf of Rumreich Inc. resulted in substantial damage to (1) the separate work of other subcontractors and (2) the pre-existing Martinez house." "The cost to repair the damages to other work and pre-existing portions of the Martinez house as described . . . above exceeds the costs to tear down the existing home and replace it with new construction - i.e. I find replacement is the least expensive alternative." "Since the cost to repair the resulting damage exceeds the determined cost to replace the house, there is no need to separately determine the cost to repair defective work that did not result in damage to other new work or to the pre-existing house."

The Arbitrator determined that "[a]s compensation for (1) the resulting physical damages to the separate work of one subcontractor caused by the defective work of one or more other subcontractors, (2) the resulting physical damages to the separate work of Rumreich, Inc., itself and as the prime contractor caused by the defective work of one or more subcontractors, and (3) the resulting physical damages to the pre-existing Martinez house caused by the defective work of one or more subcontractors or by Rumreich, Inc., Mr. and Mrs. Martinez shall recover from Rumreich, Inc. the amount of $341,164.15." Plaintiffs were also awarded costs in the amount of $377,675.91. On June 16, 2006, judgment was entered for Plaintiffs against Rumreich, Inc. in the Underlying Action.

In this Action, Plaintiffs state four claims against Defendant Lincoln General Insurance Company: (1) bad faith breach of insurance policy in failing to pay damage award against insured; (2) bad faith breach of insurance policy in failing to pay cost award against insured; (3) breach of written contract; and (4) declaratory relief. Plaintiffs filed this Action in Los Angeles Superior Court on October 19, 2007. Defendant removed the case to this Court on November 19, 2007 under diversity jurisdiction.

Plaintiffs claim standing as judgment creditors pursuant to California Insurance Code section 11580, and pursuant to a written assignment granted by the Chapter 7 Trustee, Howard Ehrenberg (the "Trustee") of Rumreich, Inc. (the "Assignment"), which took effect July 9, 2007. The Assignment grants Plaintiffs all claims held by the Insured against Defendant.

Defendants moved to bifurcate the trial in order to first determine whether the Assignment is valid. Plaintiffs' claims for bad faith breach of contract are dependent upon the validity of the Assignment because judgment creditors under section 11580(b)(2) cannot state a cause of action upon duties owed only to the named insured, such as a breach of the implied covenant of good faith and fair dealing. *Clemner v. Hartford Insurance Co.*, 22 Cal.3d 865, 889 (1978) ("in the absence of an assignment a third party claimant cannot bring an action upon a duty owed to the insured by the insurer."); *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 943-44 (1976). Thus, the Court granted bifurcation for sake of efficiency.

**II.    The Assignment is void because it exceeded the scope of the bankruptcy court's order granting relief from the automatic stay.**

"The automatic stay under 11 U.S.C. § 362(a) serves, until further order of the bankruptcy court, as an absolute bar to the commencement or continuation of any judicial, administrative, or other proceeding against the debtor 'that was or could have been commenced before the commencement of the [bankruptcy] case. . . .'" *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112 (5th Cir. 1987) (citing 11 U.S.C. § 362(a); *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984)). Section 362(a) of the Bankruptcy Code states that "a petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities. . . ." 11 U.S.C. § 362(a). "'[T]he terms of an order lifting the automatic stay are strictly construed.'" *In the Matter*

*of Wardrobe*, 559 F.3d 932, 935 (9th Cir. 2009) (quoting *Noli v. Commissioner of Internal Revenue*, 860 F.2d 1521, 1525 (9th Cir. 1988) (citing *Casperone*, 819 F.2d at 114))).

"[A]ctions taken in violation of the automatic stay are void." *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000), (citing *Schwartz v. United States (In re Schwartz)*, 954 F.F2d 569, 571 (9th Cir. 1992) ("Our decision today clarifies this area of law by making clear that violations of the automatic stay are void, not voidable.")). This is true regardless of whether the violation benefits the debtor. *See Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 373 (10th Cir. 1990) (affirming operation of automatic stay to void judgment entered during stay despite the fact that judgment was entered in favor of the debtor). This includes judicial actions taken in violation of the stay. *Gruntz*, 202 F.3d at 1084. Actions taken by a bankruptcy trustee which violate orders granting relief from the automatic stay are thus void.

"Concluding that acts taken in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the of the automatic stay may profit from their disregard of the law, provided it goes undiscovered for a sufficient period of time." *Garcia v. Phoenix Bond & Indem. Co. (In re Garcia)*, 109 B.R. 335, 340 (N.D. Ill. 1989). If the trustee is not subject to the stay then creditors may pressure the trustee to provide relief that was denied by the bankruptcy court.

Here, arbitration proceedings were stayed by the bankruptcy filing. On February 6, 2006, Plaintiffs sought relief from the automatic stay to proceed to judgment against the Insured in the Underlying Action. In its motion for relief from the stay, Plaintiffs acknowledged that Defendant Lincoln General "is disclaiming all coverage under the policy and expects creditors to sue carrier now. Creditors and movants are unwilling to accept only insurance proceeds when carrier is saying that its will not pay damages found by Arbitrator in interim award."

On March 2, 2006, United States Bankruptcy Judge Samuel Bufford granted relief from the stay to complete arbitration and proceed to judgment; however, Judge Bufford specifically limited enforcement of the judgment to "[c]ollecting upon any available insurance in accordance with applicable non-bankruptcy law[,]" and specifically precluding Plaintiffs from "[p]roceeding against the Debtor(s) as to NON-estate property or earnings." (Emphasis in original). Following

5

the Arbitrator's Final Report and the entry of Judgment in favor of Plaintiffs in the Underlying Action, Plaintiffs sought to collect against Rumreich, Inc.

A bankruptcy estate includes all property of the estate that existed at the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(2). Liability insurance proceeds are part of the bankruptcy estate. 11 U.S.C. § 541(a)(1); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560 (1st Cir. 1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001-02 (4th Cir. 1986); *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984); *In re Forty-Eight Insulators, Inc.*, 54 B.R. 905, 907-09 (Bankr. N.D. Ill. 1985).

Plaintiffs were not satisfied with the order granting limited relief from the automatic stay and sought an assignment of all claims held by Rumreich, Inc. against Defendant Lincoln General in exchange for a release of claims against the estate. Rumreich, Inc. did not have any claims against Defendant when Rumreich, Inc. filed for bankruptcy; therefore, any claims that arose against Defendant were not a part of the bankruptcy estate, and thus were "NON-estate property."

Plaintiffs' counsel drafted the Assignment and presented it to the Trustee. Without making any changes, the Trustee granted the Assignment on July 9, 2007. The Trustee did not inform bankruptcy court of the Assignment, the Trustee did not inform other creditors of the Assignment, and the Trustee did not inform other interested parties of the Assignment. When asked for a case update by the bankruptcy court, the Trustee still did not inform the bankruptcy court of the Assignment. After hearing the Trustee's testimony at trial, this Court concluded that the Trustee did not even read the Assignment before signing it.

The Assignment violated the order granting relief from the automatic stay by including claims held by Rumreich, Inc. against Defendant. These claims had not manifested at the time of Rumreich, Inc.'s filing; therefore, the claims were not available to the estate. The order granting relief from the automatic stay specifically precluded Plaintiffs from proceeding against non-estate property, such as these claims. Because the Trustee did not read the Assignment, he was unaware that it violated Judge Bufford's order.

The Assignment is void *ab initio* because it granted that which was specifically denied by

the bankruptcy court's order modifying the automatic stay. Plaintiffs have standing pursuant to California Insurance Code section 11580 only. Absent standing as assignees, Plaintiffs' claims for bad faith breach of contract fail.

Following the determination that the Assignment was invalid during trial, Plaintiffs proceeded as judgment creditors under section 11580 only on their claim for breach of contract in failing to pay the Arbitrator's damages award.

### III. Plaintiffs' claim for breach of contract in failing to pay cost award fails because Plaintiffs are not entitled to any cost award.

Plaintiffs, as section 11580 judgment creditors, are not entitled to any cost award that otherwise may be payable pursuant to the Policy's supplementary payment provision (the "SPP"). *San Diego Housing Comms'n, et al. v. Industrial Indemnity Co.*, 95 Cal.App.4th 669, 692 (2002) (the "defense duty and related costs/interest SPP fall outside the scope of the policy provisions that may be enforced by a judgment creditor."). "Otherwise, the duty to defend issue presented by the SPP becomes too closely tied up with the bad faith issues that were not allowed . . . ." *Id.* Thus, Plaintiffs claim for breach of contract in failing to pay the Arbitrator's cost award fails.

### IV. Plaintiffs failed to meet the burden of proving that Defendant breached its contract with the Insured by failing to pay the Arbitrator's damage award.

California Insurance Code § 11580(b)(2) states that common carrier liability insurance shall be construed as containing "[a] provision that whenever judgment is secured against the insured or the executory or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

"Under section 11580, an injured party must bring two lawsuits to collect a judgment from an insurer which issued a liability policy, first against the insured and then against the insurer." *Rose v. Royal Ins. Co. Of America*, 2 Cal.App.4th 709, 718 (1991) (citing *Billington*, 71 Cal.2d 728, 744-45 (1969)).

> Generally speaking, in an action by an injured party against the party who allegedly caused the injury the court does not adjudicate the issue of insurance coverage. The only questions litigated are the defendant's liability and the

7

> amount of damages. The plaintiff is not concerned with the theory of liability which produces victory; only with procuring the largest possible judgment. Similarly, the defendant is concerned only with avoiding, or at least minimizing, a judgment for the plaintiff.

*Schaefer/Karpf Prods.*, 64 Cal.App.4th at 1313 (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 279 (1966)). Coverage is usually not germane to the action, and evidence of coverage would be excluded as irrelevant. *See* Cal. Evid. Code § 1155 (evidence of liability insurance is inadmissible to prove negligence or other wrongdoing).

"[T]he California Supreme Court has held that when a suit against an insured alleges a claim that 'potentially' or even 'possibly' may subject the insured to liability for covered damages, an insurer must defend unless and until it can demonstrate, by reference to 'undisputed facts,' that the claim is not covered." *USF Insurance Co. v. Clarendon America Insurance Co.*, 452 F.Supp.2d 972 (C.D. Cal. 2006) (citing *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993)); *see also Montrose Chemical Corp. v. Superior Court*, 10 Cal.4th 645, 661-62 n.10 (1995). It is not a breach of contract for an insurer to raise coverage defenses after providing an insured with a defense in the first proceeding. An insurer may present any defenses that are not inconsistent with the judgment against the insured in the second proceeding. *Schaefer/Karpf Prods.*, 64 Cal.App.4th at 1313 (citing *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 51 Cal.2d 558, 561-62 (1959)).

To prevail in this Action, Plaintiffs had the burden of proving that: (1) they obtained a judgment for property damage; (2) the judgment was against a person or entity insured under a policy that insures against loss or damage resulting from liability for loss of or damage to property; (3) the liability insurance policy was issued by the defendant insurer; and (4) the policy covers the relief awarded in the judgment. *Wright v. Fireman's Fund Ins. Companies*, 11 Cal.App.4th 998, 1015 (1992) (applying Cal. Ins. Code § 11580).

There is no dispute that Plaintiffs obtained a judgment for property damage against Rumreich, Inc. There is also no dispute that Rumreich, Inc. was insured against loss or damage resulting from liability for loss of or damage to property for a portion of the remodel. And, there is no dispute that Defendant Lincoln General issued the policy which was in effect for a portion

8

of the period of remodeling. Thus, the issue is whether the Policy covers the relief awarded in the judgment.

Plaintiffs had the burden to prove that damages fall within the "insuring clause" of the Policy. *See FMC Corp. v. Plaisted & Companies*, 61 Cal.App.4th 1132, 1157 (1998). The policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'. . . . 'Property damage' is defined in the policy as "physical injury to tangible property, including all resultant use of that property." "Property damage" is covered in the policy only if: (1) the . . . '<u>property damage is caused by an 'occurrence'</u>' that takes place in the 'coverage territory' [defined as the United States]; <u>and</u> [¶] (2) The . . . '<u>property damage' first manifests during the policy period</u>. . . ." (Emphasis added).

Paragraph (A)(1)(d) of the Contractors Amendatory Endorsement to the Policy provides that "'property damage' first manifests at the time it is apparent to any person, including, but not limited to, an 'insured,' a 'claimant,' or a property owner." Case law provides that "the time at which the property damage becomes manifest . . . is 'that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy had been triggered.'" *Peperrell et al. v. Scottsdale Insurance Co.*, 62 Cal.App.4th 1045, 1052 (1998) (quoting *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 674 (1995)).

Coverage must be conclusively established because the Policy is not a performance bond. Here, the critical issue to insurance coverage is the timing of the first manifestation of damages. The Policy was only in force for the last two to three months of a one year remodel. Thus, Plaintiffs had the burden of showing that no damages manifested during the first nine months of construction, while negligent and improper work was performed by the insured.

Plaintiffs hinged their claim for breach of contract upon the contention that the Final Arbitration Award and subsequent judgment are sufficient to establish coverage under the insurance contract, which Defendant then refused to pay. To succeed under this theory, Plaintiffs must show that coverage was established in the Underlying Action.

The Final Arbitration Award did not discuss whether there was an occurrence that caused

9

property damage, nor did it discuss when the property damage first manifested. Plaintiffs specifically sought an undifferentiated finding of damages by the Arbitrator so that they could be reimbursed the cost of scraping and rebuilding the home. Plaintiffs admitted in their arbitration brief that some of the damages would not be covered by the Policy. Despite Plaintiffs' admission that only some of the damages were covered, they seek payment of the entire judgment, which encompasses both covered and non-covered property damage, and includes a cost award.

In determining whether the issue of coverage was actually litigated in the Underlying Action; this Court cannot rely exclusively on the findings in the Underlying Action, but must "carefully scrutinize" the pleadings and proof. *Schaefer/Karpf Prods.*, 64 Cal.App.4th at 1314 (citing *Clark v. Lesher*, 46 Cal.2d 874, 880-81 (1956)).

The Court has reviewed Arbitrator's findings, the complaint in the Underlying Action, the arbitration filings, the Arbitrator's interim and final reports, and the judgment. There is no transcript of the arbitration proceedings. Non-covered damages were included in the Final Arbitration Award itself, there was no differentiation between covered and non-covered damages, and there was no finding of that damages manifested during the coverage period. The Court finds no support for Plaintiffs' contention that coverage was actually litigated in the Underlying Action, and it is clear that Defendant Lincoln General expressly reserved its right to raise coverage defenses in this action.

Plaintiffs maintained the position that the arbitration award was prima facie evidence of coverage throughout the proceedings. The Complaint stated:

> Pursuant to the express terms of the Subject Policy attached hereto, all of the damages sought by Plaintiffs in the binding arbitration and awarded in the Judgment set forth below were and are covered by the express indemnity provisions contained within the Subject Policy, and Insurer Defendants were and are obligated under the terms of the Subject Policy to pay such amounts.

The Complaint also said that because the Arbitration was not transcribed, it is "practically and legally impossible for the Insurer Defendants to justify any denial of liability to pay the unpaid balance of Damages Award . . ."

Before trial began, Plaintiffs filed a motion *in limine* to preclude Defendant from attempting to reconstruct how the Arbitrator in the underlying action reached his decision and

1  findings as set forth in his final award. Plaintiffs argued that the Final Arbitration Award does
2  not "provide any bases for [Defendant] to deny coverage of the damages and costs awarded
3  against RUMREICH INC[,]" thus shifting the burden to Defendant to show that the property
4  damage fell under a policy exclusion. The motion is demonstrative of Plaintiffs' position that the
5  Defendant is required to indemnify the entirety of the damages found by the Arbitrator.

6      Plaintiffs' position is flawed because the Arbitration award did not establish coverage
7  under the Policy. Plaintiffs admitted this point during their closing argument. Absent a showing
8  of coverage, the burden does not shift to Defendant to show that the damages fell within a Policy
9  exclusion.

10     Mr. Martinez testified that no construction defects manifested before the Martinez family
11 moved back into the house: "So everything - we couldn't notice things before until we moved in.
12 So we noticed things after we moved in, which is in May of 2003." This statement constitutes
13 the entirety of Plaintiffs' proof of the timing of the first manifestation of property damage.

14     Mr. Martinez also testified that he and Mrs. Martinez visited the house from time to time
15 during the construction, and that Mrs. Martinez did so "on a regular basis." The Court finds it
16 incredible that none of the property damage manifested prior to May of 2003. Further, even if
17 Plaintiffs were actually unaware of the damages until May of 2003, there was no showing that
18 damages did not manifest to the insured before the policy period. Additionally, there was no
19 showing that Plaintiffs should not have been on notice of any damage. In other words, there was
20 no testimony that the damages were latent.

21     Plaintiffs simply failed to present credible evidence of the timing of the first
22 manifestation of any damages, an essential element in determining whether the property damage
23 was covered by the Subject Policy. Plaintiffs' failure is due to the fact that Plaintiffs fought this
24 action as though the insurance contract was a performance bond.

25     Commercial general liability insurance is not a performance bond or contractor
26 malpractice insurance. *F&H Construction v. ITT Hartford Insurance Company of the Midwest*,
27 118 Cal.App.4th 364 (2004). An insurer is not bound by a judgment obtained through arbitration
28 where coverage was not adjudicated. *Schaefer/Karpf Prods. v. CNA Ins. Cos.*, 64 Cal.App.4th at

1313.

Absent a showing that damages caused by an occurrence first manifested during the policy period, there is no need to examine exclusions to the Policy. Plaintiffs thus failed to meet their initial burden of establishing coverage under the insurance contract.

The Court believes that some of the damage was probably covered by the Policy; however, because Plaintiffs failed to meet their initial burden of establishing coverage, Plaintiffs cannot prevail on their claim for breach of contract in failing to pay for property damage to the Subject Property that was covered under the Policy.

V.   **Plaintiffs' claim for declaratory relief fails.**

Finally, because equitable remedies "are dependent upon a substantive basis for liability, they have no separate viability" if a plaintiff's other claims fail. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3 (2000). Here, because Plaintiffs other claims fail for the reasons stated above, their dependent declaratory relief claim also fails.

This opinion shall be deemed to be the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.

Judgment shall be entered for Defendant Lincoln General.

DATED:   August 27, 2009.

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE